U.S. BANKRUPTCY COURT
District of South Carolina

Case Number: 09-03450

ORDER ON OBJECTION TO EXEMPTION IN LIFE INSURANCE

The relief set forth on the following pages, for a total of 16 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**01/08/2010**



_____
US Bankruptcy Court Judge
District of South Carolina

Entered: 01/11/2010

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 09-3450-dd |
| Robert M. Sims, Jr. and Robin B. Sims | ) | |
| | ) | ORDER ON OBJECTION |
| Debtors. | ) | TO EXEMPTION |
| | ) | |

THIS MATTER is before the court on the debtors' claim of exemption in life insurance policies pursuant to S.C. Code Ann. § 38-63-40(A) (Law. Co-op. 2002 as amended) and the objection of the chapter 7 trustee pursuant to 11 U.S.C. § 502(a)[1] and Fed. R. Bankr. P. 3007(a). This order contains the findings of fact and conclusions of law by the court.

### Findings of Fact

1. Robert M. Sims, Jr. and Robin B. Sims are husband and wife. They filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code on May 5, 2009.

2. W. Ryan Hovis is the chapter 7 trustee.

3. Robert M. Sims, Jr. is the owner and named insured of a Merrill Lynch Life Insurance Company $250,000 Flexible Premium Variable Universal Life Insurance Policy, policy CM*****91. Robin B. Sims is the beneficiary of the policy. This policy is listed in the bankruptcy schedules with a cash surrender value of $10,068.

4. Robin B. Sims is the owner and named insured of a Merrill Lynch Life Insurance Company $250,000 Flexible Premium Variable Universal Life Insurance Policy,

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 et. seq., will be by section number.

policy CM*****92. Robert M. Sims, Jr. is the beneficiary of the policy. This policy is listed in the bankruptcy schedules with a cash surrender value of $ 8,767.00

5. The policies were issued November 1, 2000.

6. The owner of each policy retains the right to change the beneficiary unless an irrevocable beneficiary designation has been made. No evidence of an irrevocable designation of beneficiary was introduced at the hearing on the trustee's objection to exemption.

7. Each policy provides: "Prior to the insured's attained age 100 we will pay the death benefit proceeds to the beneficiary upon the insured's death."

8. Each policy owner elected death benefit proceeds option 1 in the life insurance application and no evidence of a change in election was offered.

9. The applicable death benefit proceeds are determined by the insurance company as "the larger of the face amount or the variable insurance amount" together with certain adjustments.

10. The variable insurance amount is calculated using a factor that depends on the insured's attained age multiplied by the sum of cash value plus excess sales loads and varies "daily based on investment results. . . ."

11. The cash value of the policy may be taken by the owner of the policy at any time by surrender of the policy or the owner may take a partial withdrawal or borrow against the cash value of the policy.

12. The policy provides that: "The proceeds of this policy will be free from creditors' claims to the extent allowed by law."

13. Exemption of the cash surrender value in each policy was initially claimed pursuant to S.C. Code Ann. §15-41-30(A)(8).  The trustee filed a timely objection.  Thereafter debtors amended Schedule C to claim exemption pursuant to S.C. Code Ann. § 38-63-40(A).  The trustee again filed a timely objection.

## Contentions of the Parties

The debtors contend that the beneficiary may exempt the cash surrender value of the policies under the plain meaning of S.C. Code Ann. § 38-63-40(A).  The trustee contends that the state exemption protects only proceeds and cash surrender value payable or paid to a beneficiary and thus does not spring into existence until the insured dies.

## Conclusions of Law

Property of the estate

The filing of a bankruptcy case creates an estate composed of all legal or equitable interests of debtors in property, with exceptions not relevant here.  *See* § 541(a)(1).  Courts and commentators have uniformly described the sweep of property into the estate as "broad".  *See* 5 Collier on Bankruptcy ¶ 541.01 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007)[hereinafter Collier] ("Congress' intent to define property of the estate in the broadest possible sense is evident from the language of the statute. . . ."). *See also In Re Baltimore Marine Industries, Incorporated*, 476 F3d 238, 240 (4th Cir. 2007) ( "Section 541 of the Bankruptcy Code governs the composition of the bankruptcy estate and provides a broad definition of '[p]roperty of the estate.'"). Property of the estate includes property which a debtor seeks to exempt. *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992).

Despite the joint petition filed by these debtors, the estate of each debtor remains separate unless consolidated. *See* § 302(b). There has been no motion to consolidate these estates. Each debtor has, with respect to the two life insurance policies, very different and independent interests. The joint filing and even consolidation "does not alter the debtor's state law property rights or bankruptcy rights that are derivative of those rights." *Collier* ¶ 302.06 (16th ed. 2009). *See also Bunker v Peyton*, 312 F.3d 145, 153 (4th Cir. 2002)("Under joint administration the estate of each debtor remains separate and distinct. Joint administration does not affect the substantive rights of either the debtor or his or her creditors."(citations omitted)). It is important to recognize that each property interest and each exemption stands on its own.

The interest of the owner of the insurance policy and the interest of the insured in the policy are property of the bankruptcy estate. *Milligan v Trautman (In re Trautman)*, 496 F.3d 366 (5th Cir. 2007)(where an owner had surrendered a life insurance policy prior to bankruptcy and held the cash value paid him as owner, the interest was property of the estate and was not exempt under Texas law). What then is the interest of a beneficiary of a life insurance policy under state law? The beneficiary's interest is, if anything, a lesser interest – a terminable interest at that. The South Carolina Supreme Court describes the interest this way:

> It is now well established under our decisions that where a right to change the beneficiary has been reserved to the insured in the policy, the named beneficiary, during the lifetime of the insured has not a vested right or interest but a mere expectancy, and the complete control of the policy remains in the insured. . . . [T]he beneficiary has only an inchoate right. . . .

*Swygert v Durham Life Ins. Co.*, 229 S.C. 199, 92 S.E.2d 478, 480 (1956). This is the property interest that comes to the beneficiary's bankruptcy estate. The interests of the owner/insured are property of that debtor's bankruptcy estate.

Exemption

The first duty of a chapter 7 trustee is to "collect and reduce to money the property of the estate for which such trustee serves. . . ." § 704(a)(1). This property is then distributed in payment of claims against the estate. *See* § 726. The Bankruptcy Code allows a debtor to prevent the distribution to creditors of certain property by claiming it as exempt. Section 522(b) allows debtors to choose exemptions afforded by state law or the federal exemptions listed in § 522(d). The Bankruptcy Code also permits states to "opt out" of the federal exemptions listed in the Bankruptcy Code and limits debtors in bankruptcy cases to the exemptions available under state law and other applicable federal law. § 522(b)(2). South Carolina has opted out of the federal bankruptcy exemptions. § 15-41-35 S.C. Code Ann. (2005).[2]

Certain life insurance exemptions are provided by the Bankruptcy Code. See § 522(d)(7), (8), (11). These exemptions, while not available to South Carolina debtors – who, as noted, are barred from the Bankruptcy Code exemptions by the state opt out, are mirrored in the South Carolina opt out exemptions. See § 15-41-30(8), (9), (12) S.C. Code Ann. State law often also provides other exemptions relating to life insurance policies. 4 *Collier*, ¶522.10[5] (2007); *See also* 14 and 14A *Collier*, Exemptions (for collected state statutes providing life insurance policy exemptions). The exemption statute at issue here is one such statute.

---

[2] "No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in 11 U.S.C. Section 522(d) except as may be expressly permitted by this chapter or by other provisions of law of this State."

The Bankruptcy Code provides the procedure for claiming exemptions and objecting to claimed exemptions as follows: "The debtor shall file a list of property that the debtor claims as exempt under subsection (b) of this section. . . . Unless a party in interest objects, the property claimed as exempt on such list is exempt." § 522(l). The time for objecting to a claimed exemption is found in the Federal Rules of Bankruptcy Procedure, which provide in part: "The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) . . . unless, within such period, further time is granted by the court." Fed. R. Bankr. P. 4003(b). Here Debtors have claimed and amended their exemptions and Trustee has, after an extension, timely objected to the claimed exemptions, as amended. Trustee has the burden of proof on the objection to exemption. Fed. R. Bankr. P. 4003(c).

At issue are two $250,000 life insurance policies written by Merrill Lynch. The issue is whether the cash surrender value of these policies is exempt under South Carolina law. Debtors claim exemption pursuant to state law which provides:

> (A) Proceeds and cash surrender values of life insurance payable to a beneficiary other than the insured's estate in which such proceeds and cash surrender values are expressed to be for the primary benefit of the insured's spouse, children, or dependents are exempt from creditors of the insured whether or not the right to change the beneficiary is reserved and whether or not the policy is payable to the insured if the beneficiary dies first except:
> (1) if the insured has filed a petition in bankruptcy within two years of purchasing the insurance, such proceeds or cash surrender are only exempt as permitted by Section 15-41-30; or
> (2) the amount of premiums paid and interest thereon with intent to defraud creditors;
> (3) a creditor possessing a valid assignment from the policyowner may recover from either the cash surrender value or the proceeds of the life insurance policy the amount secured by the assignment with interest.

> (B) Proceeds of life insurance or annuity contracts, by agreement, may be held by the insurer exempt from claims of the beneficiary's creditors.
> (C) Proceeds of group life insurance contracts are exempt from claims of the creditors of the insured.
> (D) Benefits of accident and disability contracts are exempt from claims of the creditors of the insured.

§38-63-40 S.C. Code Ann. State law largely governs whether life insurance benefits or other policy proceeds are subject to administration and distribution in a bankruptcy case. The right of a bankruptcy trustee to object to a claim of exemption is no greater than the right of any ordinary creditor. *See* Lee R. Russ and Thomas F. Segalla, *Couch on Insurance 3d* §§ 66:42, 66:44 (2009).

In construing a state statute a federal court follows the decisions of the highest state court and in the absence of a controlling decision should interpret the statute as it believes the state court would. *Caron v Farmington National Bank (In re Caron)*, 82 F.3d 7, 9 (1st Cir. 1996); *Trautman* at 368. In South Carolina statutes are interpreted by giving effect to legislative intent. *Grant v. City of Folly Beach*, 346 S.C. 74, 79, 551 S.E.2d 229 (S.C. 2001)( "The cardinal rule of statutory construction is for the Court to ascertain and effectuate the intent of the legislature. If a statute's language is plain and unambiguous, and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the Court has no right to look for or impose another meaning. Where a statute is ambiguous, however, we must construe the terms of the statute according to settled rules of construction. It is well-settled that statutes dealing with the same subject matter are in *pari materia* and must be construed together, if possible, to produce a single, harmonious result." (citations omitted)).

There are no reported cases interpreting § 38-63-40. The present version of the statute was adopted by the General Assembly and signed by the Governor as part of

1988 Act No. 305, § 1 and 1993 Act No. 89, §1.  These Acts replaced and re-codified former South Carolina Code §37-169 (1962).  The 1962 statute had no application to the issue at hand, cash surrender value, and the South Carolina Supreme Court had determined that it provided for widows and children of a decedent "at the time of . . . death" only.  *Wilson v Mutual Benefit Life Ins. Co. of Newark, N.J.*, 182 S.C. 131, 188 S.E. 803 (S.C. 1936) (interpreting what was then Section 7985 of the Code of Laws of South Carolina (1932))[3].  Trustee argues that the present exemption statute, while expanded to cover cash surrender value, should continue to be construed to provide protection to a beneficiary only at and following the time of death of the insured.

While as noted there are no South Carolina cases construing the specific exemption statute at issue, several cases do give guidance on construing exemption statutes. These exemption statutes are generally referred to in the case law as homestead statutes.  The South Carolina Supreme Court has stated: "The Homestead statute is to be construed liberally in the debtor's favor so as not to frustrate the end sought to be accomplished." *Bonebrake v. Morrow*, 183 S.C. 170, 190 S.E. 506 (1937).  The "rationale for Homestead exemptions is well established: to protect from creditors a certain portion of the debtor's property," *Cerny v. Salter*, 311 S.C. 430, 432, 429 S.E.2d 809, 811 (1993), and to prevent citizens from becoming dependent on the State for support. *American Service Corp. v. Hickle*, 312 S.C. 520, 435 S.E.2d 870 (1993).

With these over arching principles in mind, the court must first look to the exemption statute and give effect to its plain meaning.  In construing the statute a court

---

[3] The only other case interpreting the earlier version of the present exemption statute is a District Court opinion in a bankruptcy case finding the exemption statute unconstitutional under a now repealed provision of the South Carolina Constitution (section 28, article 3 of the Constitution of 1895) limiting exemptions to those expressed in the Constitution.  *See In re Cunningham, 15 F.2d 700* (E.D. S.C. 1926).

should look to the type policy involved (life insurance, group life insurance, annuity contracts, accident and disability contracts), the relationship of the debtor to the policy (owner, beneficiary, or insured), and the benefit being claimed as exempt (benefits, proceeds, cash surrender values). *See Collier*, ¶ 522.10[5]. Section 38-63-40(A) S.C. Code Ann. applies to life insurance payable to a beneficiary, but not the insured's estate, when the death benefit and cash value are expressly designated for the insured's spouse, children or dependents. The benefit and cash value of these two policies are so payable. Further, the owner and insured of each policy is one of the debtors and the beneficiary is the other – the spouse. The question then is the reach and extent of the exemption.

State laws providing exemptions for life insurance policies, proceeds, dividends, cash value, and the like vary widely. Some statutes render insurance proceeds entirely exempt while others are limited to a fixed sum of money. The state statutes also vary in the extent of exemption; some extending only to creditors of the insured and others to both creditors of the insured and the beneficiary. *See* George Gleason Bogert, *The Law of Trusts and Trustees* § 243 (2009) (discussing the scope of exemption in connection with trusts funded with life insurance). *See also* William Houston Brown, *The Law of Debtors and Creditors* § 6:74 (2009) (providing an overview of life insurance interests and collecting state exemption statutes and cases).

The importance of identifying the object of the protection of the exemption statute is highlighted by a South Carolina Court of Appeals decision concerning the exemptions available under Title 15 of the state code and the impact on survival of exemptions following the death of a debtor. The court noted the legislature's careful distinction

between exemptions benefiting the debtor and those benefiting both the debtor and dependents of the debtor stating:

> The types of exempt property under the Homestead Act may be categorized into the following classes of persons to whom a particular exemption applies: (1) those who are a "debtor or dependent of the debtor;" or (2) those who are a "debtor." Hence, five property subsections exempt properties of the "debtor or dependent of the debtor." See, e.g., § (1) (residential properties); § (3) (household furnishings); § (4) (jewelry); § (6) (professional materials); § (9) (professional prescribed health aids). Eight other subsections exempt only property of the "debtor." See, e.g., § (2) (motor vehicle); § (5) (interest in cash and liquid assets capped at $1,000); § (7) (unmatured life insurance contract); § (8) (accrued dividend of unmatured life insurance contract); § (10) (various governmental and pension benefits); § (11)(A) (crime victim's reparation award); § (11)(B) (payment for bodily injury); § (11)(C) (life insurance contract). Thus, the plain language of the Homestead Act does, in fact, provide for the survival of the exemption for certain types of property beyond the death of the debtor, while remaining silent as to such application of the exemption to other types of property. As to exemptions that extend to a debtor or his dependents, the death of the debtor does not necessarily extinguish the exemption.

*Scholtec v Estate of Reeves*, 327 SC 551, 558, 490 S.E.2d 603, 606 (S.C. App. 1997). This suggests careful scrutiny of the exemption statutes protecting the interest of beneficiaries, owners and insureds with regard to life insurance policies.

South Carolina does not have a unified life insurance exemption statute, rather the exemptions relating to life insurance policies are several and each is limited rather than broad. A review of these exemptions further illustrates the limited character of each of the exemptions statutes, including the statute at issue here. The Title 15 state law exemptions[4] are modeled on the federal bankruptcy exemptions. Interpretation of these

---

[4] The following real and personal property of a debtor domiciled in this State is exempt from attachment, levy, and sale under any mesne or final process issued by a court or bankruptcy proceeding . . .(8) Any unmatured life insurance contract owned by the debtor, other than a credit life insurance contract. (9) The debtor's aggregate interest, not to exceed in value four thousand dollars . . . in any accrued dividend or interest under, or loan value of, any unmatured life insurance contract owned by the debtor under which the insured is the debtor or an individual of whom the debtor is a dependent. . . .(12) The debtor's right to

three exemptions, in the absence of a state high court decision, should generally follow federal law since there were no material changes to the exemptions as enacted by the General Assembly. Debtors have not claimed the bankruptcy exemptions; however, an examination of the statutory provisions is useful as a basis for understanding that life insurance exemptions protect differing, and sometimes narrow, interests. *3 Norton Bankruptcy Law and Practice 3d* § 56:19.

Section 15-41-30(A)(8) exempts the unmatured life insurance contract itself but not other rights that arise under the contract.[5] The exemption prevents a trustee from surrendering a life insurance contract. *Colliers* ¶ 522.09[7]. This exemption has been construed in the Fourth Circuit to extend to proceeds that "flow as an incident of ownership of the contract to the debtor rather than the estate." *In re Walters*, 14 B.R. 92, 94 (Bankr. S.D. WV 1981) *aff'd* 724 F.2d 1081 (4th Cir. 1984); *See also In re Cordova*, 73 F.3d 38, 40-1 (4th Cir. 1996). *Walters* preserved for the debtors the proceeds of a life insurance policy that would otherwise have come into the estate following the petition date by virtue of 11 U.S.C. § 541(a)(5) and is limited to instances where property is swept into a bankruptcy estate in the 180 days following the order for relief. To whatever extent *Walters* may extend this exemption following the maturing of a life insurance contract, the general rule remains that the exemption of unmatured life insurance contracts, whether under the federal bankruptcy exemption statute or state statutes modeled after § 522(d), does not extend to an exemption of cash value. *See In re Oxford*,

---

4(cont.)
receive or property that is traceable to: . . .(c) a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of that individual's death, to the extent reasonably necessary for the support of the debtor and any dependant of the debtor. §15-41-30(A)(8)(9)(12) S.C. Code Ann.

[5] While not claimed in this bankruptcy case, it would seem prudent to claim this exemption as a matter of routine given the possibility that the trustee might cancel the contract for any reason.

274 B.R. 887 (Bankr. D. Idaho, 2002); *Woodson v Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610 (9th Cir. 1988).

Section 15-41-30(A)(9)[6] exempts a limited loan value, presently $4,000, of a life insurance policy owned by the debtor insuring the life of the debtor or a person on whom the debtor is dependent. This is generally construed as single, limited dollar exemption in the cash value of one or more life insurance policies. *See Brown v Swartz (In re Swartz)*, 18 B.R. 454 (Bankr. D. Mass. 1982). Section 15-41-30(A)(12)(c) exempts payments under a life insurance contract on the life of a person upon whom the debtor was dependent, to the extent necessary to support the debtor and dependents. South Carolina law also provides exemption in the proceeds and cash surrender value of group life policies, in an amount not to exceed $50,000, on the life of an individual for the benefit of spouses and children. *See*. § 38-65-90 S.C. Code Ann.

Cases construing life insurance exemption statutes in other states also aid the court in construing this statute. This is especially the case, despite the broad differences in the language employed in the exemption statutes, given that a number of the state life insurance exemption statutes make an effort to specify the benefit that is exempt and limit the reach of particular classes of creditor. Under one Florida life insurance exemption statute, F.S.A. § 222.13[7], the exemption, as here, extends to protect only from claims by creditors of the insured. *In re Lee*, 190 B.R. 951 (Bankr. M.D. Fla. 1995). The same is true for North Carolina General Statute § 1C-1601(a)(6) and Article X, section 5 of the

---

[6] The debtors as policy owners have asserted an intention to claim this exemption if the §38-63-40(A) exemption is not available.

[7] "Whenever any person residing in the state shall die leaving insurance on his life, the said insurance shall inure exclusively to the benefit of the person for whose use and benefit such insurance is designated in the policy, and the proceeds thereof shall be exempt *from the claims of creditors of the insured.*" (emphasis supplied in the original quotation). *Lee* at 952.

North Carolina Constitution. *Butler v Sharik (Matter of Sharik)*, 41 B.R. 388, 389-90 (Bankr. E.D. N.C. 1984). *See also Caron* (a beneficiary has no interest in a life insurance policy prior to the death of the insured and under a New Hampshire statute the exemption does not extend to protect against claims of creditors of the beneficiary); *Trautman* (Texas statute extends exemption of proceeds paid to an insured or beneficiary but does not protect cash value paid to a policy owner upon surrender of a policy). A different result obtains when the life insurance exemption statute applies to the creditors of the person effecting the insurance policy and, in the instance of a spouse as beneficiary, to the creditors of the beneficiary as well. *See* N.Y. Ins. Law § 3212(b)(1),(2); *Wornick v Gaffney*, 544 F.3d 486, 489 (2nd Cir. 2008).

Conclusion

The South Carolina exemption statutes concerning life insurance proceeds are each limited in scope. The extent of exemption available under any particular statute depends on the type of insurance policy, the interest of the person claiming the exemption, and the policy interest at issue. The beneficiary of each policy at issue brings an inchoate property interest to his or her bankruptcy estate. There is nothing to exempt in or from this defeasible interest. The bankruptcy estate of the owner/insured holds the interest in the life insurance policies. The beneficiary's claim that this interest is exempt from distribution by the trustee is not supported in § 38-63-40(A).

First, because the beneficiary has no interest in the life insurance policy before the death of the insured under state law or the insurance contract, the better construction of the statute is that it applies to proceeds paid to the beneficiary on the death of the insured and, like its predecessor, creates no exemption until the death of the insured. Why would

the legislature create an exemption for a property interest that the beneficiary does not possess? The statute employs the word "payable" with respect to the exemption that the beneficiary has claimed. The life insurance contract at issue in this case provides that benefits are payable only at the death of the insured. The statute provides different treatment for benefits in the four subdivisions of the statute: (A) applies to proceeds and cash surrender value *payable*, (B) to proceeds *held*, (C) in regard to group insurance policies, to proceeds – but not cash surrender value – *without limitation* as to creditors of the insured, and (D) in regard to accident and disability contracts, to benefits *without limitation* as to creditors of the insured (emphasis added). In context, the exemption statute is designed to protect dependents receiving death benefits under a life insurance policy from the pursuit of creditors of the deceased.

Second, to the extent that any exemption is intended and exists, the beneficiary interest is exempt under the statute only from the claims of creditors of the insured and not from the beneficiary's own creditors. This distinction is often critical in the cases cited in this opinion and is the deciding factor here.

Defendants argue that the cash value is exempt in favor of the beneficiary as against all. In other words, any sum of money, great or small, whether still in the hands of the insurance company or received by the beneficiary, would be exempt so long as the funds were traceable to proceeds of a life insurance policy of the type at issue here. For example under this construction a beneficiary in receipt of a million dollars or more could shield the cash from the beneficiary's own creditors, whether the debt was incurred before or after receipt of the proceeds. This hardly seems the likely intended result from

a legislature that before May 25, 2006[8] restricted South Carolinians to more modest exemptions than available under the federal bankruptcy exemptions. Further, it clearly is not what the General Assembly said.

Where the statute is clear on its face, the words should be given their plain meaning. The General Assembly limited the exemption benefitting a life insurance beneficiary to protect only against claims of creditors of the insured. A creditor of the beneficiary can look to the proceeds of a life insurance policy in satisfaction of its claim. Since the trustee stands in the shoes of the beneficiary's creditors, the exemption is not available and the trustee's objection is sustained.

AND IT IS SO ORDERED

---

[8] The Home Security Act, S.C. 2006 Act No. 300, became effective May 25, 2006, without the signature of the Governor. The Act was expressly passed in anticipation of the federal Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 to offer South Carolinians a greater, but still limited, exemption in a home. *See In re Evans*, 362 B.R. 275 (Bankr. D. S.C. 2006); *In re Mingo and Barbara Chisolm*, Case No. 06-03484-D, slip op. 3 (Bankr. D. S.C. December 7, 2006).